The next matter, No. 25-1359, Rebecca Holland v. Elevance Health, Inc. At this time, would the counsel for the appellant please introduce herself on the record to begin. May it please the Court, my name is Anna Prakash and I represent the appellant, Rebecca Holland. I'd like to reserve three minutes for rebuttal, please. You may have two minutes. Thank you. The Affordable Care Act was passed more than 15 years ago, and since that time, insurance companies like Anthem have been on notice that they cannot refuse to cover pre-existing conditions, they cannot drop people from coverage or charge them more based on their health conditions, and they cannot discriminate in the design of their benefit plans, including on the basis of disability. But that is what Anthem does here. And we've alleged two main forms of discrimination, intentional and in the alternative, disparate impact. With respect to intentional discrimination, there is facial and there is proxy, which is a form of facial discrimination. I'd like to direct the Court to one specific set of facts that we have alleged here on that point, and that is that Anthem, in fact, most insurance companies, recognize that these types of medications are medically necessary to treat obesity. What is more, Anthem covers these types of medications when used to treat diabetes. Why is it that there is an exclusion with respect to these medications when they are used to treat obesity? That in and of itself raises a question of whether there is discrimination here. Even if you are just looking at the term weight loss, there is a sufficiently close fit when you look at how it is applied in this context. There is a bar to anybody who wants to seek these medications for the treatment of obesity, but not for some other medically necessary purpose. And that is a problem, because when the proxy so maps on to the disability in question, that raises the inference of discrimination. The other parts of this discriminatory conduct that we can look at here are that not only are these medications listed on Anthem's prescription drug plan indicating their medical necessity, but they are listed under the obesity heading in the plan, indicating that that proxy is a close fit. This comes after, as I said, 15 years of being on notice that they needed to do something to change their plans and the allegations that they in fact did not. The historical exclusion of people with disabilities in insurance plans. And just because they might include some very limited set of coverage, for example, bariatric surgery after an excessively long waiting period, that doesn't mean that they are not discriminating on the basis of disability. And on these points, the Schmidt case, for example, which is cited in our materials, is particularly instructive, because there, the case was dismissed. The dismissal was affirmed at the Ninth Circuit, because the plaintiff did not really get into what to do with the coverage of cochlear implants, for example, which is akin to the bariatric surgery allowance in this case. On remand, the plaintiff's amended complaint addressed that. It addressed how the majority of people who get to the point of needing prescription hearing aids are in fact people with disabilities, and cochlear implants, just like bariatric surgery here, may not be indicated by their doctor, may not be desired. And here, where we are talking about physicians prescribing medication that Anthem itself deems medically necessary to treat obesity, an insurance company should not be in the way of that treatment. Now, that does not mean that this is a slippery slope where an insurance company needs to cover anything under the sun. All we are asking for in this case... Why not, though? All we are asking for, Your Honor, in this case... Not all that you're asking for, but why isn't that the slippery slope? That's what I'm trying to figure out. It's not a slippery slope because the relief that we seek is that they lift the bar to having these claims considered, not that they honor all of those claims. Right now, there's just a categorical no. You're seeking this medication for obesity, so we are not going to consider it. But when they lift that bar, they have a whole host of tools at their disposal to prevent that slippery slope. For example, they have utilization review. They have provider networks that they can limit. There are multiple drugs that treat this. They could choose to cover some but not others. Right now, they cover none. There are ways that insurance companies can cabin their coverage. It's just that they don't get the choice to do that in a way that so categorically discriminates against a set of people. Even if this court were to decline to go down the categorical route of finding that everybody with obesity that requires a prescription is disabled, we have alleged that for Rebecca Holland, this plan discriminated against her based on her disability, but for her diagnosis of obesity, which the district court in this case recognized she had stated a claim for, but for her diagnosis, for example, if she had come forward with diabetes, this medication would have been covered, but under Anthem's plan, it was not covered because the diagnosis she came forward with, the reason she needed that treatment was for obesity. Could you just address this sort of smaller issue of who is the right entity to sue here? Is it Anthem or is it Elevance? So we sued the parent company. We've used the names interchangeably, Elevance and Anthem. But the Affordable Care Act in 1557 itself says that liability attaches to any health program, any part of which is receiving federal funds. And so it does not matter that we are talking about the parent company here because any part of which, certainly there are parts of the corporate structure that are receiving federal funds here. And I believe it was the Hammons case that involved the University of Maryland where the court went on to explain that it would, you know, we can't make this into a corporate shell game where we are moving around liability. And I believe the Seventh Circuit addressed this squarely in the T.S. v. Hart of Carden case in finding that what was considered within the zone of coverage was the entity as a whole. Thank you. I'll reserve the remainder of my time. Thank you, counsel. At this time, would counsel for the appellee please introduce themselves on the record to begin? May it please the court, Elizabeth Hecker for Elevance Health. Your Honors, there's been a lot of discussion today about what the Affordable Care Act does and does not require and how it differs from the Rehabilitation Act. And I'd like to just briefly address that at the onset. Because excluding these drugs from coverage when they are used primarily for weight loss is not discriminatory, it is no surprise that HHS has never required weight loss drugs to be covered under the Affordable Care Act. As the plaintiff admits, and this is discussed in the brief, but I'll give some color to it here. You're saying it's not discriminatory and they're saying that it is. That's correct, Your Honor. But I will point out that Medicaid and Medicare are both required to cover, to comply with 1557 of the Affordable Care Act. Neither of those cover weight loss medications for weight loss purposes under Part D. They don't. They are federally funded health care plans. They are required to comply with 1557. They do not cover weight loss drugs for purposes of weight loss. If you look at the Affordable Care Act regulations, which lay out the requirements for Affordable Care Act coverage for prescription drugs, that incorporates the United States Pharmacopeia guidelines in mandating which drugs, classes or essential health benefits under the Affordable Care Act. These guidelines, which are the same ones used by CMS for Medicare and Medicaid, do not include weight loss drugs as covered drugs. That's in 45 CFR 156.122A1. Indeed, CMS and HHS have specifically acknowledged that weight loss drugs are not required to be covered under the Affordable Care Act. That's in a 2022 proposed rule 87 FR 74100 through 74101. So just with respect to the Affordable Care Act and its requirements, the Affordable Care Act does not and has never required weight loss drugs to be covered. Now, of course, your honors, if a plan decides to cover weight loss drugs for weight loss, it cannot discriminate on the basis of disability. It cannot say, we're going to cover weight loss drugs for weight loss unless you are blind or unless you are over 70 years old. That would be discrimination. So let's go back to what discrimination means in the context of the Affordable Care Act. Most fundamentally here, the plaintiff admits that she has access to the exact same benefits as every other person who participates in her health plan, disabled and non-disabled alike, obese and non-obese alike. Now, she tries to get around this by claiming that everyone who is categorized as obese and has a prescription for weight loss drugs is somehow by definition disabled. She has absolutely no support for such a conclusory allegation and common sense tells us that it lacks plausibility. Unable to rely on anything in the Affordable... I'm sorry. I mean, but people who don't have an obesity problem don't need obesity medication. I don't think that's necessarily true, your honor. In fact... They may need it for blood pressure, but they don't need it for obesity. Your honor, I personally know people who are 10 pounds overweight who have these prescriptions and we can use our common sense to understand that... I do too, but I don't consider that obesity. Certainly it's not obesity, your honor, and those people who are not disabled similarly cannot get their weight loss drugs covered. My point is that the weight loss exclusion excludes people who are disabled and who are not disabled, people who are obese and not obese. No one can get these drugs for purposes of weight loss regardless of whether they are obese and that is why it is not singling out people who are obese for discrimination. The Affordable Care Act does not mandate coverage for every single thing a doctor may consider medically necessary. That's simply not what the Affordable Care Act does. It lays out 10 essential health benefits and says, here are the health benefits that you have to cover. Weight loss drugs are not included in the prescription drug regulations, but it says to the extent you do cover any medication, any disability, any condition, you cannot do that on a discriminatory basis. It never says that a plan must cover every single thing that is medically necessary. Well, those 10 areas that the Affordable Care Act says has to be addressed, are any of those 10 associated with weight loss or obesity in any way? When you say associated with, it's certainly high blood pressure, for instance. A plan could not say, we cover high blood pressure medications, but not for people who are obese, right, if obese is considered a disability. It covers medications. If people who have obesity have high blood pressure as a result, they're able to get the exact same drugs that everyone in the plan gets. Every single problem that might result from an obesity diagnosis, an obese person has the exact same care as anyone else in the plan who has that impairment. First, Your Honor, I would just like to move to the specific allegations and the specific theories that the plaintiff relies on. First, she alleges that the plan's exclusion of coverage for weight loss drugs constitutes intentional discrimination. Regarding facial discrimination, she points out that under the title Bariatric Surgery and Morbid Obesity, the plan states benefits are not included for weight loss drugs. First of all, that is in the medical benefit, that's in her medical benefit, not her prescription drug benefit, and we don't understand her to be challenging her medical benefit there. But the point of that section, Bariatric Surgery, Morbid Obesity, is to tell you what is covered. And what is covered is, for Morbid Obesity, the plan covers Bariatric Surgery. That's the point of the plan, Morbid Obesity and Bariatric Surgery. Relatedly, she fails to allege that Elevance was deliberately indifferent to any member's federally protected rights for failing to cover a drug that even Medicare and Medicaid, which again are subject to 1557, do not cover. Second, she alleges that excluding weight loss drugs from coverage is a proxy for discrimination against individuals with disabling obesity. But she fails to give the court any sense of the overlap between individuals who wish to take these drugs and those who have disabling obesity. She leaves the court to guess what percentage of individuals with such prescriptions are merely overweight. So taking your points, and I accept them, and I do have some concerns about the allegations of discrimination in the complaint, I think she would probably respond, yes, but this is a motion to dismiss. Once I get discovery, I really can flush out these. I've made allegations of discrimination, and I've given you some general facts about that. But that's exactly why I get past the motion to dismiss, and in discovery I'll have more of the evidence of this discrimination. How do you address that? Sure, Judge Montecalvo, that's exactly the argument they made in E.S. v. Regents and in Schmidt early on, and the court said no, that's not enough on a motion to dismiss. You cannot simply allege this is a proxy and not back it up at all. In E.S., what they ended up alleging on their third amended complaint was that only 6% of people with minor hearing loss wanted hearing aids, and only 5% of people with major hearing loss were eligible for a cochlear implant. The same with Schmidt. They were able to make the similar kind of statistical allegations. Now, statistics are not always necessary for sure. Sometimes common sense will tell us that something is a proxy. For instance, the gray hair example comes up a lot. We don't have to have numbers in front of us to understand that discrimination against someone with gray hair is age discrimination. But that's simply not the case here. We know from living in the world that there are many people who are merely overweight and not obese who have prescriptions for these drugs. There are no facts to allege a proxy whatsoever, and it's simply not enough to say, even at the motion to dismiss stage, there is a proxy here. There is no case that the plaintiffs have cited, none, where these kind of allegations were sufficient at the motion to dismiss stage. Even in the Fuon case, which the plaintiff relies on fairly heavily, there had to be academic studies that they cited linking large opiate prescriptions to disability. We don't have that here. We don't have any academic studies. We have no numbers. And common sense doesn't get us there either. So there simply is not enough in here to allege a proxy. And let me remind the court that proxy discrimination is a form of intentional discrimination. Proxy discrimination claims essentially say that the plan, in order to discriminate against people with a disability, a plan concocted some other kind of over-inclusive or under-inclusive proxy. It's an intentional discrimination theory. And that's why you have to allege facts that are stronger than they are here. And again, no court has held that facts who are disconclusory with regard to proxy made it past the motion to dismiss stage. And I want to make one very important point regarding disparate impact litigation while I have some time. In Bruce Guy, this court held that under Alexander v. Choate, a disparate impact claim is available under the Rehab Act only when persons with disabilities are denied meaningful access to a government benefit or program. Here, again, there is no benefit offered under her plan. It is offered under other plans, but no benefit offered under her plan to which she does not have the exact same access as every other member of the plan. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce herself on the record? She has a two-minute rebuttal. Thank you, Anna Prakash for Rebecca Holland. Common sense tells us that when you deny coverage for prescription medication only when it is used to treat obesity, you are targeting people with obesity. Anthem designed a plan that covers medically necessary prescription medications, including the type of medications at issue here, but not when they are prescribed to treat obesity. That is benefit design discrimination. And we aren't talking about simple weight loss drugs or people who are 10 pounds overweight. We are talking about this exclusion applying when somebody with diagnosed obesity and a prescription to treat that obesity cannot have their medically necessary prescription medication covered when other people who do not have disabling obesity get those things covered. And I'll talk just a little bit about the E.S. and Schmidt cases. In the amended complaint, which survived and went past a motion to dismiss, in the amended complaint in both of those cases, the class in those cases was narrowed to those people who had prescription hearing aids or who had a prescription for hearing aids. And that is similar here. We are not talking about the people who might be 10 pounds overweight. We're not talking about the people who are seeking bone broth or green tea or warm lemon water in the morning. We are talking about scientifically proven medications that Anthem agrees are medically necessary to treat obesity and they should be covered on the same basis that other medically necessary drugs are covered. We ask this Court to reverse. Thank you. Thank you, Counsel. That concludes argument in this case.